UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL NULL, | CASE NO. 1:10CV521 |
| Plaintiff, | JUDGE SOLOMON OLIVER |
| v. | Magistrate Judge George J. Limbert |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Michael Null ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:

**I**.   **PROCEDURAL AND FACTUAL HISTORY**

On July 5, 2006, Plaintiff filed an application for SSI, alleging disability beginning July 1, 2006 due to mental illness.  ECF Dkt. #11-7 at 165-167.[1]  The SSA denied Plaintiff's application initially and on reconsideration.  ECF Dkt. #11-4 at 99-100.

On June 5, 2008, Plaintiff filed a request for an administrative hearing.  ECF Dkt. #11-5 at 122.  On November 6, 2008, an ALJ conducted an administrative hearing via video where Plaintiff was represented by counsel.  ECF Dkt. #11-3 at 79-93.  At the hearing, the ALJ heard testimony from Plaintiff, witness Tracy Sue Comstock, Plaintiff's girlfriend, and Mr. Macy, a vocational expert ("VE").  *Id*.  On January 2, 2009, the ALJ issued a Decision.  ECF Dkt. #11-2 at 61-73.  Plaintiff filed a request for review, *Id.* at 56-57, which the Appeals Council denied.  *Id*. at 47-51.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

On March 11, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 6, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #12. On September 23, 2010, Defendant filed a brief on the merits. ECF Dkt. #16. On September 27, 2010, Plaintiff filed a reply brief. ECF Dkt. #17.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from bipolar disorder, type I; attention deficit hyperactivity disorder, dysthymic disorder, personality disorder with antisocial traits, substance addiction in remission, and mild obesity, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #11-2 at 63. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* at 63-65.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined by 20 C.F.R. 416.967(c) with the exception that he may perform simple tasks, he may have occasional contact with the public (e.g., no retail sales), and no high production stress (e.g., no assembly line work.). *Id.* at 65.

Based upon the VE's testimony, the ALJ further found that Plaintiff could perform the requirements of representative occupations such as a laundry laborer, bench assembler, or wire worker. ECF Dkt. #11-2 at 72. The ALJ therefore determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to SSI. *Id.* at 73.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in

>   20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.   ANALYSIS

Plaintiff filed his SSI application shortly after he completed a ten year sentence at Grafton

Correctional Institute for aggravated burglary, gross sexual imposition, and kidnapping. While in prison he was treated with Risperdal, an anti-psychotic medication. Upon his release, he was referred to the Nord Center ("Nord") for continuing mental health care. According to the initial diagnostic assessment report from Nord, Plaintiff began experiencing hallucinations, religious preoccupation, rumination, insomnia, and nightmares in 2004. Over the course of the next two years, Plaintiff was treated by several physicians at Nord including Enrique Huerta, M.D. (July, 2006-September, 2007), Praveen Abraham, D.O. (November, 2007-August, 2008) and Kong Y. Kwon, M.D. (April 2008).

When Plaintiff began his treatment at Nord in late June, 2006, Dr. Huerte continued the Risperdal prescription, then added Wellbutrin approximately two weeks later. ECF Dkt. #11-17 at 385. Dr. Huerte periodically increased the dosage of the Wellbutrin, in response to Plaintiff's complaints about diarrhea. Increasing the dosage appears to have resolved the problem, at least breifly. ECF Dkt. #11-16 at 348.

During the course of his treatment at Nord in 2006 and early 2007, the medical records indicate that Plaintiff showed no signs of psychosis and tolerated the Risperdal. ECF Dkt. #11-6 at 354-55, 347, 422. However, on November 24, 2006, Plaintiff's social worker noted that Plaintiff was not interested in any job referrals as he stated that he would rather "live off other people" and "stay home and chill." ECF Dkt. 11-16 at 344. When the social worker informed Plaintiff that it was difficult to qualify for SSI benefits, the records reflect that Plaintiff acknowledged that he was capable of full time work, and would have to find a job. *Id.*

In February, 2007, medical records indicated that Plaintiff was sober and feeling more positive, and chose to stop taking his Risperdal. ECF Dkt. #11-18 at 428. Plaintiff was actively looking for work at that time. *Id.* According to the records from Nord, Plaintiff had been working for two months and a half months, apparently from mid-March to late May, but had been laid off. *Id.* at 427. At his May and June, 2007 appointments, Plaintiff was symptom free and feeling well. *Id.* at 426-27. On September 10, 2007, Dr. Huerte terminated Plaintiff's case at Nord, due to Plaintiff's decision to discontinue his medication. *Id.* at 425.

On October 12, 2007, Plaintiff returned to Nord because he had been experiencing paranoid feelings for about two weeks, ECF Dkt. #11-18 at 412, and he was concerned about losing his job because of an inability to concentrate. *Id.* at 397. Plaintiff also reported hearing whispering voices. *Id.* Dr. Abraham prescribed Lithium due to the side effects that Plaintiff experienced with Risperdal. ECF Dkt. #11-20 at 479-80. At the time, Plaintiff had been working in a sandstone quarry for approximately three months. *Id.* Plaintiff continued his treatment at Nord for several months. In January, 2008, Dr. Abraham described him as "symptom free" but acknowledged that Plaintiff was suffering tremors and cramps as side effects of the medication. ECF Dkt. #11-18 at 416. Plaintiff indicated that he would prefer to "hold off" on job counseling, despite having recently lost his job. ECF Dkt. 11-18 at 353.

Plaintiff was admitted to Community Health Partners in April, 2008. The record reflects that he was angry, irritable, not eating properly, and staying up at night. Dr. Kwon attributed his problems to the fact that he had stopped taking Lithium five days prior to his admittance. ECF Dkt. #11-20 at 475. At the time, he had been laid off from his job and was collecting unemployment. *Id.* Dr. Kwon noted that Lithium was effective and still indicated. *Id.* at 476. Plaintiff sought continuing treatment at the Nord Center in 2008 following his admission to Community Health Partners. The medical records reflect that Plaintiff was taking his medication as prescribed and that the side effects were tolerable. ECF Dkt. #11-20 at 463-64.

In a letter dated November 28, 2008, Dr. Abraham wrote that Plaintiff could not maintain employment due to his mental illness. The letter reads, in its entirety:

> The above individual has been my patient since November, 2007. He is diagnosed with Bipolar disorder, type I. He has a particularly serious and recurrent case of this disorder. He is prone to sever bouts of incapacitating depression and periods of psychotic, aggressive, and agitated mania when he loses touch with reality. His lapses into illness are often triggered by stressful situations. His condition is life long and will, in all likelihood, have repeated exacerbations that will make it extremely difficult for him to obtain and sustain employment with any degree of stability.

ECF Dkt. #11-20 at 489 ("2008 letter").

Although the ALJ gave substantial weight to the treatment notes of Dr. Huerte and Dr. Kwon because he concluded that they were consistent with the medical evidence, he gave little weight to

the 2008 letter because "he did not explain how he came to his conclusions, which are inconsistent with his treatment records." ECF Dkt. #11-2 at 26.[2]

Plaintiff first argues that the ALJ's reasons for rejecting the conclusions in the 2008 letter are unlawful and unsupported. ECF Dkt. #12. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the

---

[2] After the issuance of the decision, Dr. Abraham wrote a second letter, ECF Dkt. #11-13 at 262 ("2009 letter"), apparently in response to the ALJ's criticism of the 2008 letter. The Appeals Council made the 2009 letter a part of the record. However, additional evidence submitted to the Appeals Council may be considered only for the purposes of a sentence six remand. *Foster v. Halter*, 279 F.3d 357 (6th Cir. 2001). For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). The information provided in the 2009 letter was available during the prior proceeding. Moreover, although it provides additional analysis of Plaintiff's mental illness, the conclusions stated in the letter are at odds with the evidence in the record. Even if this Court considers the 2009 letter, it should not change the outcome of this appeal.

following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Plaintiff contends that the ALJ rejected Dr. Abraham's opinion. Plaintiff's argument lacks merit because the 2008 letter invades the province of the ALJ. "When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*. That is precisely what the ALJ did in this case. *See* Tr. at 17.

-7-

Moreover, Plaintiff's medical records do not support Dr. Abraham's conclusions. Plaintiff's condition was controlled with Risperdal from June, 2006, when he began treatment at Nord, until September, 2007, when he discontinued the medication and his case file was closed by Dr. Huerte. When Plaintiff returned to Nord in October, 2007, his symptoms were successfully treated with Lithium. As a matter of fact, Dr. Kwon attributed Plaintiff's hospitalization in 2008 to his decision to stop taking Lithium. In the medical records, Dr. Kwon wrote that Lithium was effective in treating Plaintiff's mental illness and that the medication should continue to be prescribed. Although Plaintiff suffered side effects from both Risperdal and Lithium, the record reflects that he was symptom-free when he took the drugs as prescribed. Moreover, although Plaintiff contends that he lost jobs because of his illness, there is no evidence in the medical record to support that conclusion.[3] Accordingly, Dr. Abraham's notes, as well as the notes of the other physicians that treated Plaintiff after he was released from jail, do not support the conclusions articulated in Dr. Abraham's letter.

Plaintiff next argues that the RFC finding in this case is not supported by substantial evidence. Plaintiff contends that the ALJ's determination of his RFC is contrary to SSR 85-15, which reads that "it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings . . . .Thus, the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." Although couched in terms of an incorrect RFC, Plaintiff's second argument is essentially a restatement of his first argument, that is, that the medical records do not support the conclusion that he is capable of performing low stress jobs, due to his periodic episodes of both depression and mania.

To the contrary, and as stated earlier, Plaintiff's hospitalizations in 2007 and 2008 were directly attributable to his decisions to stop taking his medication. Plaintiff essentially concedes this

---

[3] In his merits brief, Plaintiff contends that he "did obtain work that lasted for several months and ended with an episode of psychosis. (R. 410.)" ECF Dkt. #12 at 11. However, the record reflects that Plaintiff had discontinued his anti-psychotic medication a year before he was admitted to Nord in October of 2007. ECF Dkt. #11-18 at 410. There is no indication that Plaintiff's hospitalization in 2007 was the result of work stress rather than a failure to take his medication. Moreover, he testified at the hearing that his employer gave him time off to recover, but that after he returned, he required surgery. Ultimately, his employer did not want him back after his surgery. ECF Dkt. #11-3 at 84.

fact when he argues for the first time in his reply brief that "the failure to continue with medication is a symptom of the illness." ECF Dkt. #17 at 3, citing *Grossweiler v. Barnhart*, 2003 WL 22454928. There is no evidence in record that supports the conclusion that Plaintiff's failure to take his medication was a product of his mental illness. In *Grossweiler*, the Court relied upon evidence in the record to conclude that the ALJ's conclusion that Plaintiff's noncompliance with his prescribed treatment was not justifiable. The Court wrote:

> To the contrary, the evidence suggests that Plaintiff's noncompliance with his prescribed treatment was attributable to his mental illness. Dr. Beverly Vanderpool, Plaintiff's treating physician at the Center for Health Care Services, noted that "a major problem regarding his illness is rapid cycling and as he begins to enter a manic phase as in most bipolar [patients] he quits his medication until he becomes very ill." Another report quoted Plaintiff as saying "It's a secret why I got off my medicines. That's between myself and God." Thus, the fact that Plaintiff is "fully competent to understand that he should take his medications" is an entirely separate issue from the issue of whether his refusal to follow the prescribed regimen is part and parcel of his schizoaffective or bipolar disorder. And the ALJ's finding that Plaintiff's failure to take his medicine was entirely "his choice" is devoid of any discussion the various medical reports' notations to the contrary.

Id. at *3. Plaintiff has not cited any similar evidence in the case sub judice.

Finally, Plaintiff challenges the hypothetical articulated by the ALJ. "If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). Once again, Plaintiff contends that he is incapable of performing any job. However, there is substantial evidence in the record that, if Plaintiff takes his medication, he is capable of performing low stress work.

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:


DATE: July 15, 2010

                               */s/George J. Limbert*
                               GEORGE J. LIMBERT
                               UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).